JOSEPH A. F. CARDIFF, PROSECUTOR, v. THE NEW JERSEY STATE BOARD OF ARCHITECTS.

Argued November 10, 1902—Decided February 24, 1903.

Under the act entitled "An act to regulate the practice of architecture," approved March 24th, 1902 (*Pamph. L.*, *p.* 54), creating the state board of architects, and requiring persons about to engage in the practice of architecture to submit to examination and obtain a certificate from the state board, it is provided that any person who shall at the time of the passage of the act be engaged in the practice of architecture in this state and shall present to the state board an affidavit to that effect, shall be entitled to receive such certificate upon the payment of the regular fee. The prosecutor presented his application in due form, accompanied by his affidavit, showing that he was engaged in such practice in this state at the time of the passage of the act. He was afterwards examined before the board upon the facts stated in the affidavit and as a result the board rejected the application. *Held*, on review, that the refusal of the certificate was not justified by the facts developed and that the action of the board should be reversed and that a certificate should issue.

On *certiorari*.

Before Justices DIXON and HENDRICKSON.

For the prosecutor, *John J. Mulvaney.*

For the defendant, *Corbin & Corbin.*

The opinion of the court was delivered by

HENDRICKSON, J. The prosecutor of this writ seeks to set aside the action of the New Jersey State Board of Archi-

tects, refusing to grant his application for a certificate to practice the profession of architecture in the State of New Jersey.

The statute creating this board and requiring a certificate to practice such profession is entitled "An act to regulate the practice of architecture," and was approved March 24th, 1902. *Pamph. L., p.* 54. Provision is made for the examination of applicants for certificates, to whom, if the examination is satisfactory, such certificate shall be granted, upon the payment of fees amounting to $20.

It is also provided in section 10 of the act as follows: "Any person who shall, at the time of the passage of this act, be engaged in the practice of architecture in this state and who shall present to the state board an affidavit to that effect, or a certificate from a similarly constituted board of another state, and any person who is a member of the American Institute of Architects shall be entitled to receive such certificate upon the payment to the said board of a regular fee of five dollars." It is not disputed but that the prosecutor made his application under the provision here quoted, as one engaged in the practice of architecture in this state when the act was passed, in accordance with the form adopted by the board, and with the proper affidavit annexed, as therein required. The application was sworn to on May 28th, 1902. The applicant was required to name or describe by location two buildings, of which the applicant was the architect, with the names and post-office addresses of the owners thereof. This the prosecutor did. He gave his own present office and place of business as 288 Monmouth street, in Jersey City. The applicant submitted himself to examination before the board. This examination appears as a part of the return, preceded by the following statement: "Examination of architects applying for certificates by affidavit."

The examination was conducted by the president of the board. A careful inquiry was made as to the allegations of the affidavit, the applicant answering in detail every question fully and stating in answer to questions that he had a sign out at his place of business a few months prior to the pas-

sage of the act, and at the time of its passage. Being further examined, he gave in detail his connection as architect in the erection of a number of other buildings, some of which were built under his personal supervision as such. The buildings referred to in the application and in the examination were located in Jersey City, where this examination was conducted. It was also developed in his examination that his name had been in the directory as an architect for a number of years past and he had used stationery with his name, as architect, upon it, and that in 1900 he had written five articles on building construction for architectural papers in New York.

He had also worked in the office of an architect in the city of New York, and before that he was with the secretary of the board before which he was being examined. The return further shows that at a meeting of the board at their rooms in Jersey City, on July 18th, 1902, opinions of counsel of the board were received and filed, and then this entry from the minutes appears: "Upon the advice of counsel the application of Jos. A. F. Cardiff was not granted and the secretary was instructed to write and inform Mr. Cardiff of the action of the board," &c.

Annexed appears the letter of counsel advising the board that the applicant appears to have been and to be employed by others and to be classed as a learner or student in architecture, and recommending that Mr. Cardiff be not admitted without examination.

There is no evidence to justify the conclusion that the applicant was a mere learner or student in architecture, but on the contrary, we think, the evidence shows without dispute that the prosecutor was engaged in the practice of architecture in this state on March 24th, 1902, when the act was approved.

It has been urged that inasmuch as the case shows that the prosecutor admitted in reply to a question by the secretary that on one occasion, when questioned in the secretary's office, where prosecutor was working, as to whether he was serving as architect on one of the buildings mentioned in the

affidavit he had prevaricated, saying that he had only furnished a tracing for the persons engaged in the work and was not connected with the job in any other way, the board was justified in the exercise of its discretion in refusing to believe his sworn affidavit, and, as a result, in denying his application. But, as it already appears, the board did not put its rejection of the application upon this ground. If it had, the facts being undisputed, there is nothing to warrant such a conclusion.

It has also been urged that this court cannot look into the facts without first ruling the board to certify the facts and the ground of their action. Whether the proceedings under review emanate from a tribunal that is a special statutory one in the sense of the supplement to the *Certiorari* act of 1895 (*Gen. Stat., p.* 370), giving the court the power to determine disputed questions of fact as well as of law, it is not necessary to determine. The question is raised by the defendant board, which has certified the examination of the applicant as a part of its record. And if the examination is not legally here it may be disregarded altogether, and then the prosecutor's right to his certificate upon his application and affidavit is entirely clear.

Another objection raised is that *certiorari* is not the proper remedy; that *mandamus* alone will lie. But the act itself provides in the twelfth section that the person whose certificate is refused shall have the right to appeal by *certiorari* to this court, which is therein authorized and empowered to review and correct the action of the state board, and the latter is directed to forthwith carry out the judgment of the court.

The result is that the action of the board is reversed, and an order will be made directing the certificate to be issued to the prosecutor.